IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-606-FL

| | |
|---|---|
| IRA THOMAS HARRIS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NORTH CAROLINA DEPARTMENT OF )<br>TRANSPORTATION,[1] )<br>)<br>Defendant. ) | ORDER |

This matter is before the court on defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 31). The issues raised are ripe for ruling. For the following reasons, the court grants in part and denies in part defendant's motion to dismiss as set forth herein.

**BACKGROUND**

Plaintiff, proceeding pro se, commenced this action against defendant and former defendant supervisory employees at plaintiff's place of employment, the North Carolina Department of Transportation, on November 19, 2015, asserting claims for race discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII") and claims for age discrimination in violation of the Federal Age Discrimination and Employment Act of 1967, 29 U.S.C. §§ 621, et seq. ("ADEA"). On September 26, 2016, the court dismissed former defendant supervisory employees and granted plaintiff leave to file an amended complaint on or

---
[1]The court constructively has amended the caption of this order to reflect dismissal previously of formerly-named defendants, Ron Garrett, Battle Whitley (misidentified in the complaint as "Battley Whitley"), and Al Grandy.

before October 24, 2016. Thereafter counsel entered appearance on behalf of plaintiff and timely filed plaintiff's amended complaint.

In the amended complaint, plaintiff proceeds only against defendant, having abandoned any claims against individual former defendants. Plaintiff asserts a claim for failure to promote under Title VII. Plaintiff also asserts claims for disparate treatment and hostile work environment under both Title VII and the ADEA. Plaintiff seeks compensatory damages for pain and suffering, declaratory judgment, and injunctive relief.

On January 25, 2017, defendant filed the instant motion to dismiss, asserting that plaintiff's claims must be dismissed because they are outside the scope of plaintiff's previously filed charges with the EEOC, are untimely, or fail to state a claim for which relief can be granted. Plaintiff responded in opposition to the instant motion on February 24, 2017. Defendant filed no reply.

**STATEMENT OF FACTS**

The facts alleged in the complaint may be summarized as follows.

Plaintiff is a black male employed by defendant beginning in 1983. Allegedly, plaintiff has been called "nigger" "throughout his career" and had racial slurs directed at him from coworkers, with management not taking corrective action even though these incidents have been reported. (Am. Compl. ¶ 16).

Around 2003, plaintiff began performing the duties of transportation II supervisor but was not promoted to that position until two years later, receiving less pay than the previous white supervisor. Additionally, plaintiff was denied promotion in 2015 when his supervisor, Greg Garwin, transportation supervisor III, retired. Allegedly, if previous policy and practices had been followed,

2

plaintiff would have been selected, but a younger white male, Ron Garret, a transportation technician with no supervisory experience, was selected.

Plaintiff has had numerous difficulties in his role as a supervisor working for defendant. As the only black supervisor who works in his department at his location in Durham, North Carolina, plaintiff's subordinates allegedly refuse to take directives from a black supervisor or an older supervisor. In response, defendant allegedly added another supervisor who is white to plaintiff's department. When plaintiff and management had to discipline plaintiff's subordinates, management did nothing to show that the following behaviors of plaintiff's subordinates were inappropriate: not reporting to work on time, leaving early, not working while on a job site, refusing to take directions at a job site, or sleeping in the office. Additionally, white subordinates who refused to perform work plaintiff had directed them to accomplish would suffer no consequences when plaintiff reported them.

White supervisors allegedly are treated more favorably than plaintiff. Plaintiff's supervisor does not speak to plaintiff directly and sends messages to plaintiff about work that needs to be accomplished. Unlike plaintiff, white supervisors have state-issued cell phones and are allowed to drive state vehicles home, meaning it is not necessary for them to drive first to the work facility in Durham and then to the highway work site, and white supervisors are not required to work nights, weekends, and holidays to accommodate contractors who work odd hours. Unlike other supervisors who are white, plaintiff is constantly criticized for work not being done, even though his workers are often sent to another division to do work, and plaintiff receives assignments and job orders at the last minute with little time to prepare and properly staff the assignment. Plaintiff is authorized only two crew members although his work load and assignments are more substantial than that given

3

to other supervisors. Unlike other supervisors who are white, plaintiff's workspace lacked air conditioning for several hot summers, but plaintiff's complaints about this issue were not resolved until the department moved into a new building in 2016.

Although plaintiff has worked for the state of North Carolina for 32 years, plaintiff allegedly has to perform work that younger similarly-situated members of management have not been required to perform. A younger supervisor who has the same performance expectations as plaintiff is not required to do field and office work, only office work, unlike plaintiff who allegedly has to work both in the office and in the field and at night.

Plaintiff repeatedly has been asked when he is going to retire from his position, he has been referred to as an "old man" by managers and coworkers, and has been subject to continuing harassing comments due to his age, including a coworker coming to him with a tape measure and stating "I'm measuring you for your coffin/grave." (Am. Compl. ¶ 21-22). No action was taken against this coworker. Allegedly, plaintiff's working conditions have been made difficult in the hopes that he will retire.

Plaintiff filed two administrative charges, one alleging race-based discrimination and one alleging age-based discrimination, with the Equal Employment Opportunity Commission ("EEOC") and the North Carolina Office of Administrative Hearings ("NCOAH"),[2] on March 31, 2015. The EEOC had 180 days to conduct an investigation and either bring suit or issue a right to sue letter.

---

[2]Where state law provides state and local remedies for alleged discrimination, complainants are required to initiate state proceedings before resorting to federal law. See Davis v. N.C. Dept. of Corr., 48 F.3d 134, 137 (4th Cir. 1995) (citing 42 U.S.C. § 2000e–5(b)). In states that have deferral agencies, a worksharing agreement between EEOC and the deferral agency may be "establish[ed to] streamline[] procedures between the two agencies for managing claims." Puryear v. Cnty. of Roanoke, 214 F.3d 514, 518 (4th Cir. 2000). North Carolina has such a worksharing agreement, and has designated the NCOAH as the deferral agency for discrimination claims. N.C. Gen. Stat. § 7A–759.

Plaintiff became "entitled" to the right to sue letter on or about September 30, 2015.[3] This suit was filed on November 19, 2015.

**COURT'S DISCUSSION**

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal [the] evidence" required to prove the claim. Twombly, 550 U.S. at 556. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

B.  Analysis

Based on plaintiff's complaint, plaintiff could allege under Title VII a failure to promote claim and, under both Title VII and the ADEA, disparate treatment and hostile work environment claims. Defendant argues that some of plaintiff's claims are barred as being outside the scope of

---

[3] Plaintiff eventually was issued one right to sue letter from the EEOC regarding his age-based discrimination claims on January 6, 2016.

plaintiff's EEOC charges and as being untimely. The court will address both of these arguments and then each of plaintiff's remaining claims in turn below.

1.      Scope and Timeliness

   i.      Claims Outside Scope of EEOC Charges

Under Title VII and the ADEA, plaintiff must exhaust his administrative remedies by first filing a charge with the EEOC. See Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). The "scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." Jones v. Calvert Grp., Ltd., 551 F.3d 297, 300 (4th Cir. 2009). However, this "exhaustion requirement should not become a tripwire for hapless plaintiffs," where the Title VII framework was set up as "a remedial scheme in which lay persons, rather than lawyers, are expected to initiate the process" and where it "would be inconsistent with this framework to require untrained parties to provide a detailed essay to the EEOC in order to exhaust their administrative remedies." Sydnor v. Fairfax Cty., Va., 681 F.3d 591, 594 (4th Cir. 2012) (internal quotations omitted).

Defendant argues that two of plaintiff's discrimination claims, failure to promote under Title VII and hostile work environment under the ADEA, are outside the scope of his EEOC charges and are therefore procedurally barred.

While the court recognizes "that EEOC charges often are not completed by lawyers and as such must be construed with utmost liberality," the court cannot "read into administrative charges allegations they do not contain." Balas v. Huntington Ingalls Indus., Inc., 711 F.3d 401, 408 (4th Cir. 2013). Plaintiff's charges contain many allegations related to disparate treatment and hostile work environment claims under both Title VII and the ADEA, but in neither charge does plaintiff mention not being promoted, which fails to provide "the employer with adequate notice and result[s]

in a failure to investigate by the responsible agency," the very reasons for the requirement of administrative exhaustion. Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996) (stating that an administrative charge of failure to promote based on the plaintiff's sex did not encompass allegations of sexual harassment). In this case, plaintiff failed to allege anything in his charges that would give an indication that he would later pursue a failure to promote claim. Therefore, plaintiff's failure to promote claim is outside the scope of his charges and is barred.

However, plaintiff alleged sufficient facts in his age-based discrimination charge to support a hostile work environment claim, notwithstanding not stating the specific words "hostile work environment." (See DE 31-2 ("I believe I have been discriminated against because of my age. Younger members of management and co-workers keep asking when am I going to retire; they keep referring to me as 'old man'; . . . a co-worker came up to me with a tape measure and said, 'I'm measuring you for your coffin/grave.'"));[4] see also Jones, 551 F.3d at 300 (internal quotations omitted) ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit. Thus, a claim in formal litigation will generally be barred if the EEOC charge alleges discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex."); Smith, 202 F.3d at 248 (plaintiff's retaliation claim was not procedurally barred because her EEOC charge raised the issue of retaliation even though the charge made different fact allegations than did the complaint).

Thus, plaintiff's failure to promote claim is barred, but plaintiff's hostile work environment claim under the ADEA is not.

---

[4] A court may consider a document attached to a motion to dismiss if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016).

ii.     Timeliness of Claims

Charges filed with the EEOC must be filed within 180 days of each discrete adverse employment action described in the complaint or within 300 days of such when plaintiff had previously filed with certain state authorities like the NCOAH. See, e.g., 42 U.S.C. § 2000e–5(e)(1); 29 U.S.C. § 626(d); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002) ("Each discrete discriminatory act starts a new clock for filing charges alleging that act. The charge, therefore, must be filed within the 180– or 300–day time period after the discrete discriminatory act occurred"). The same limitation periods apply regarding ADEA claims. See 29 U.S.C. § 626(d).[5]

Defendant argues that because plaintiff filed his charges on March 31, 2015, all allegedly discriminatory acts occurring more than 300 days prior, or before June 4, 2014, are time barred.

First, construing all well-pled facts in light most favorable to plaintiff, many if not all of the alleged discriminatory acts related to plaintiff's disparate treatment claims could have occurred within the 300-day window before plaintiff filed his charges on March 31, 2015. In fact, in both of plaintiff's charges, the earliest discrimination alleged to have occurred is some time in 2014, which could be within the 300-day applicable window. Second, regarding plaintiff's hostile work environment claims, allegedly discriminatory acts that would be time barred are saved under the doctrine of "continuing violation." See Guessous v. Fairview Prop. Investments, LLC, 828 F.3d 208, 221 n.5 (4th Cir. 2016) (citing Morgan, 536 U.S. at 116–17) ("the Supreme Court rejected the

---

[5] Under Title VII, once the EEOC closes its investigation and plaintiff receives a right to sue letter, plaintiffs have a 90-day period in which to file their claims in court. 42 U.S.C. § 2000e–5(f)(1); see also Watts-Means v. Prince George's Family Crisis Ctr., 7 F.3d 40, 42 (4th Cir. 1993). However, the Fourth Circuit has "long held that receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." Davis, 48 F.3d at 140. The ADEA, in contrast, provides that "[n]o civil action may be commenced by an individual under this section until 60 days after a charge alleging unlawful discrimination has been filed with the [EEOC]." 29 U.S.C.A. § 626(d)(1). Neither Title VII or the ADEA require that a plaintiff secure a physical right to sue letter prior to filing a claim in federal court.

'continuing violation' doctrine then followed in the Ninth Circuit, which held a defendant could be liable for discrete discriminatory acts that were otherwise time barred if those acts were related to subsequent violations falling within the statutory period . . . . However, it <u>adopted</u> such a doctrine with respect to hostile work environment claims, and this and other courts have referred to this doctrine as a 'continuing violation' approach."). Under the doctrine of continuing violation, "[i]n determining whether an actionable hostile work environment claim exists, we look to all the circumstances . . . . Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." <u>Morgan</u>, 536 U.S. at 116–17 (interior quotations omitted).[6]

Defendant also argues that because plaintiff did not file his charges as "continuing actions" with the EEOC, all allegedly discriminatory acts before June 4, 2014, are time barred, and presumably the doctrine of "continuing violation" does not apply. Although plaintiff did not check the "continuing action" boxes in his charges and stated the words "hostile work environment" only in his race-based discrimination charge, because plaintiff describes in both charges a general pattern of discrimination related to a hostile work environment, plaintiff's claims before this court are reasonably related to the charges or would have been developed by reasonable investigation of the original charges and are not time barred. <u>See</u> <u>Guessous</u>, 828 F.3d at 221 n.5; <u>Morgan</u>, 536 U.S. at 117; <u>see also</u> <u>Bass v. E.I. DuPont de Nemours & Co.</u>, 324 F.3d 761, 765 (4th Cir. 2003) ("The words 'hostile work environment' are not talismanic, for they are but a legal conclusion; it is the alleged

---

[6]It is incumbent on plaintiff to show, for example, that discriminatory incidents that occurred "throughout his career" are in fact not isolated incidents and that at least one such incident did occur during the filing period. <u>See</u> <u>Morgan</u>, 536 U.S. at 116–17.

9

facts supporting those words, construed liberally, which are the proper focus at the motion to dismiss stage.").

Accordingly, based on the facts alleged to the court at this time, plaintiff's disparate treatment claims under Title VII and the ADEA and his hostile work environment claims under Title VII and the ADEA are not barred. The court will address each claim below.

2.  Failure to State a Claim

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). The ADEA provides that "[i]t shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). The ADEA creates a cause of action for federal employees over the age of 40 who allege discrimination on the basis of age. See 29 U.S.C. § 633a.

Under Title VII and the ADEA, a plaintiff need not establish a prima facie case of discrimination in order to survive a motion to dismiss. The Supreme Court has rejected this requirement in the context of a motion to dismiss, Swierkiewicz v. Sorema N.A., 534 U.S. 506, (2002)), but plaintiffs are still required to plead sufficient facts to support all the elements of a claim, Bass, 324 F.3d at 765 ("Our circuit has not, however, interpreted Swierkiewicz as removing the burden of a plaintiff to allege facts sufficient to state all the elements of her claim.").

Recently the Fourth Circuit has clarified that a plaintiff "need not plead facts sufficient to establish a prima facie case of race-based discrimination to survive a motion to dismiss," as dictated by Swierkiewicz, but "the more stringent pleading standard established in Iqbal and Twombly applies." Woods v. City of Greensboro, 855 F.3d 639, 648 (4th Cir. 2017).

      i.      Disparate Treatment Claims

Plaintiff does not specifically set forth a claim using the terms "disparate treatment," but the court infers that he has pleaded this claim based on the allegations in his amended complaint. In order to state a claim for disparate treatment, plaintiff must show sufficient factual allegations to support a plausible claim that: (1) that he is a member of a protected class; (2) whose job performance was satisfactory; (3) that was subjected to adverse employment action; and (4) that similarly situated employees outside his class received more favorable treatment. White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004). "An adverse employment action is a discriminatory act which adversely affects the terms, conditions, or benefits of the plaintiff's employment." James v. Booz–Allen Hamilton, Inc., 368 F.3d 371, 375 (4th Cir. 2004) (internal quotations omitted). While "[c]onduct short of ultimate employment decisions can constitute adverse employment action," James, 368 F.3d at 375–76 (quoting Von Gunten v. Maryland, 243 F.3d 858, 865 (4th Cir. 2001), abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006)) (internal quotation marks omitted), the "typical requirements for a showing of an 'adverse employment action'" are "discharge, demotion, decrease in pay or benefits, loss of job title or supervisory responsibility, or reduced opportunities for promotion," Boone v. Goldin, 178 F.3d 253, 255 (4th Cir.1999).

11

The court finds that plaintiff alleges sufficient facts to survive a motion to dismiss regarding race-based discrimination based on disparate treatment under Title VII and age-based discrimination based on disparate treatment under the ADEA. For both claims, it is undisputed that plaintiff is a member of a protected class, and, although little information is given as to plaintiff's job performance, he did allege that he had worked for defendant a significant amount of time and had been promoted. (See Am. Compl. ¶¶ 7-8).

For plaintiff's race-based disparate treatment claim, much of what plaintiff claims that could be "adverse employment actions," which adversely affect the terms, conditions, or benefits of employment, are not.[7] However, plaintiff alleges the following employment actions which may be considered adverse employment actions depending on context: that plaintiff was paid less for the same position held by a white counterpart;[8] that management added another supervisor to his department because of plaintiff's race, permitting inference of lowering plaintiff's level of responsibility; that plaintiff was forced to work nights and weekends, unlike other supervisors who are white; and that he did not receive a state vehicle and state-issued cell phone, unlike other supervisors who are white. (See Am. Compl. ¶¶ 8, 13). Accepting as fact for the purposes of this motion that the other supervisors that plaintiff compares himself to are in fact similarly situated to

---

[7]For example, plaintiff alleges that unlike his white counterparts, he is constantly criticized, that his supervisor will not directly speak to him, that he does not have help in disciplining his subordinates, that he is given last minute assignments, that he had to work without air conditioning, and that he receives more work with fewer crew members. (See Am. Compl.¶¶ 10-12, 14-15). Although frustrating, these actions are not ultimate employment actions that adversely affect the terms, conditions, or benefits of plaintiff's employment. See Page, 645 F.2d at 233 ("[D]ecisions having no immediate effect upon employment conditions . . . were not intended to fall within the direct proscription of [Title VII].").

[8]The elements of a claim for disparate treatment based on pay discrimination under Title VII has been articulated by the Fourth Circuit more specifically as: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action with respect to compensation; and (4) that similarly-situated employees outside the protected class received more favorable treatment." White v. BFI Waste Servs., LLC, 375 F.3d 288, 295 (4th Cir. 2004).

plaintiff as alleged, these allegations are sufficient to show that the terms, including pay, conditions, and benefits of plaintiff's employment were adversely affected, whereas supervisors outside plaintiff's class received more favorable treatment. See Bazemore v. Friday, 478 U.S. 385, 395 (U.S. 1986) ("Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ."); James, 368 F.3d at 376 (adverse employment action can be a decrease in "compensation, job title, level of responsibility, or opportunity for promotion"); Gerner v. County of Chesterfield, 674 F.3d 267 (4th Cir. 2012) (concerning a severance package, holding "discriminatory denial of a non-contractual employment benefit [may] constitute[ ] an adverse employment action"); Hishon v. King & Spalding, 467 U.S. 69, 75 (1984) (concerning a partnership opportunity, stating a "benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all.").

Similarly, for plaintiff's age-based discrimination claims, plaintiff asserts that he was treated differently than his counterparts who are younger in that he was expected to do field work, not just office work, work nights, and not drive a state-issued vehicle. (See Am. Compl. ¶ 21 ("A younger supervisor who has the same performance exceptions as Plaintiff is not required to do field and office work. He simply is able to do office work. Plaintiff, however, must do both field and office work as well as work at night. The younger supervisor is allowed to drive a state vehicle home. However, Plaintiff is not allowed to drive a state vehicle home.")). Here, plaintiff's allegations are similar to those alleged to support plaintiff's race-based disparate treatment claims. Similarly, the court finds that accepting as fact for the purposes of this motion, these allegations are sufficient to show that the terms, conditions, and benefits of plaintiff's employment were adversely affected, whereas supervisors outside plaintiff's class received more favorable treatment. See Jensen-Graf

13

v. Chesapeake Employers' Ins. Co., 616 Fed. Appx. 596, 598 (4th Cir. 2015) (listing adverse employment actions as including where plaintiff alleges he was "given significantly different responsibilities").

Accordingly, with respect to plaintiff's claims of discrimination based on disparate treatment under Title VII and the ADEA, defendant's motion to dismiss is DENIED.

    ii.    Hostile Work Environment Claims

Under both Title VII and the ADEA, to state a hostile work environment claim, plaintiff must allege sufficient factual allegations to support a plausible claim that: 1) he experienced unwelcome harassment; 2) the harassment was based on race or age; 3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and 4) there is some basis for imposing liability on the employer. Bass, 324 F.3d at 765. To determine whether an employer's alleged conduct was sufficiently severe or pervasive, a court must examine the circumstances, including the frequency of discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with the employee's work performance. Harris v. Forklift Systems, Inc., 510 U.S. 17, 23 (1993).

Regarding hostile work environment claims based on race under Title VII, plaintiff's allegations, including that he was repeatedly called "nigger" and other racial slurs on numerous occasions "throughout his career" and that defendant knew these events occurred and did not take corrective action, (see Am. Compl. ¶ 16), are sufficient to survive a motion to dismiss.[9] The Fourth

---

[9]Plaintiff's allegations of experiencing physically threatening behavior, of having his office trashed, his personal car vandalized, and having a snake placed in his vehicle, are also concerning. However, plaintiff has not identified when these events occurred, who may have been behind them, or, most importantly, any nexus between these acts and plaintiff's race. Thus, these allegations are insufficient to support a hostile work environment claim based on race or age. See Bass, 324 F3d at 765; see also Bennett v. CSX Transp., Inc., 552 F. App'x 222, 225 (4th Cir. 2014) (finding

14

Circuit in Boyer-Liberto, has found that the use of racial epithets, even a limited number of times, can engender a hostile work environment. Boyer-Liberto v. Fontainebleau Corp.,786 F.3d 264 (4th Cir. 2015) (vacating grant of summary judgment). In Boyer-Liberto, an employee alleged race-based discrimination when she was fired soon after reporting that her supervisor called her a "porch monkey" on two separate occasions. Boyer-Liberto,786 F.3d at 280. When considering the severity and pervasiveness of the incident, the Fourth Circuit concluded that a reasonable jury could certainly find that the use of that racial epithet was "severe enough to engender a hostile work environment." Id. The court reasoned that the racial slur went "far beyond being [a] merely unflattering" statement, to the extent that it was "degrading and humiliating in the extreme," regardless of the frequency. Id. To further emphasize the severity of the conduct, the court went on to note that "'porch monkey' is about as odious as the use of the word 'nigger,' . . . the latter epithet, of course, 'is pure anathema to African-Americans.'" Id. (citing Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001)). Therefore, plaintiff has sufficiently alleged facts to sustain a claim for hostile work environment under Title VII.

Under the ADEA, plaintiff alleges he has been asked when he will retire, that he has been called "old man" by both supervisors and coworkers, and that one person approached him with a measuring tape stating he was "measuring" plaintiff for his "coffin/grave." (Am. Compl. ¶¶ 21-22; see also id. ¶ 29 ("Defendant has allowed Plaintiff to be subjected to a hostile work environment based upon his age . . . his working conditions have been made difficult in the hopes of forcing him to retire.")).

---

allegations of race-based vandalism "based purely on speculation and conjecture" and unable to support a hostile work environment claim where plaintiff was unable to show a reasonable probability that supervisors who were upset with her vandalized her vehicle).

The court is not convinced that plaintiff "cannot prove any set of facts in support of his claim entitling him to relief." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999). Here, plaintiff has sufficiently alleged that the above described harassment was unwelcome, based on his age, and sufficiently severe or pervasive to survive a motion to dismiss. See Buckner v. Lew, No. 5:13-CV-199-FL, 2014 WL 1118428, at *4 (E.D.N.C. Mar. 20, 2014) (determining ADEA discrimination claim survives a motion to dismiss where plaintiff's manager referred to plaintiff as "the elderly lady"); see also Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 240-41 (2d Cir. 2017) (finding allegations sufficient to state a claim where plaintiff alleged frequent demeaning comments based on age from supervisors and coworkers such as "drop dead," "retire early," and "take off your wig"); but see EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008) (in context of Title VII hostile work environment claims, stating "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment") (quotations omitted).[10]

Therefore, with respect to plaintiff's claims of hostile work environment based on race discrimination under Title VII and age discrimination under the ADEA, defendant's motion to dismiss is DENIED.

---

[10]Defendant asserts that plaintiff, in order to survive a motion to dismiss on his hostile work environment claims, must plead sufficient allegations to hold defendant liable under a vicarious liability theory or negligence theory. However, plaintiff's complaint alleges numerous times that he reported the treatment he received to management, and nothing was done. (See Am. Compl. ¶¶ 12, 16, 18, 19, and 22). Plaintiff has sufficiently pleaded defendant's liability to survive a motion to dismiss. See Dennis v. County of Fairfax, 55 F.3d 151, 155 (4th Cir. 1995) ("the employer is liable where it had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action"); Carter v. Ball, 33 F.3d 450, 461 (4th Cir. 1994) (same in context of racial discrimination).

## CONCLUSION

Based on the foregoing, the court GRANTS in part and DENIES in part defendant's motion to dismiss. (DE 31). Plaintiff's claim for failure to promote under Title VII is DISMISSED WITHOUT PREJUDICE. Plaintiff's claims for disparate treatment and hostile work environment under Title VII and the ADEA are allowed to proceed. An initial order will follow.

SO ORDERED, this the 12th day of September, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge